***FILED UNDER SEAL***

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ERIK D. VANDEVELDE,<br><br>Plaintiff,<br><br>v.<br><br>STANLEY PYCH, *et al.*,<br><br>Defendants. | Civil Action No. 2:23-cv-20506 (ES) (SDA)<br><br>Hon. Stacey D. Adams<br><br>**OPINION and ORDER**<br><br>November 13, 2026 |

## OPINION

**THIS MATTER** comes before the Court on a motion filed by Plaintiff Erik D. Vandevelde ("Plaintiff") for a Protective Order seeking to limit the scope of an expert medical examination. (ECF No. 66). The motion was opposed by Defendants Stanley Pych, Steven Strowbridge, Jason DelTurco, John Field, Scott Shinkowski, Anthony Marciano, Dean Adone, and Roxbury Township (collectively "Defendants"). (ECF No. 71). For the reasons set forth below, Plaintiff's motion is **DENIED**.

## BACKGROUND

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants arising from his allegedly wrongful arrest and subsequent detention. (ECF No. 1). Plaintiff claims that Defendants unlawfully entered and searched his home on June 8, 2022 and then improperly charged Plaintiff with several counts of felony possession of a weapon as a result of this unlawful search. (*Id.*). Plaintiff was detained pending trial. (*Id.* ¶ 26). However, on November 29, 2022, the state court granted Plaintiff's suppression motion, ruling that the search of Plaintiff's residence was unlawful. (*Id.* ¶ 23). This decision was affirmed by the New Jersey Appellate Division on June

22, 2023, and on July 18, 2023 all charges against Plaintiff were dropped. (*Id.* ¶¶ 24-25). Plaintiff claims that, as a result of this incident and his resulting unlawful detention at Morris County Correctional Facility from June 8, 2022 through December 1, 2022, he "suffer[ed] permanent and serious personal injury and emotional pain and suffering" and "severe physical, mental, and emotional trauma, humiliation and embarrassment and great financial loss." (*Id.* ¶¶ 26-27, 38).

In his discovery responses, [redacted]

Plaintiff retained Dr. Gianni Pirelli, a licensed psychologist and board-certified forensic psychologist, as an expert to support his emotional distress claims. (ECF No. 71-1, Parisi Cert., Ex. C). In his report, [redacted]

[redacted] As part of his evaluation of Plaintiff, Dr. Pirelli conducted two days of clinical psychological testing and collateral interviews of Plaintiff's grandmother. (*Id.*).

Dr. Pirelli diagnosed Plaintiff with Post-Traumatic Stress Disorder ("PTSD") and concluded that, as result of the incidents that are the subject of this litigation, Plaintiff suffered [redacted]. [redacted]

To rebut Plaintiff's report, Defendants retained Dr. Jonathan Mack ("Dr. Mack") a board-certified neuropsychologist. (ECF No. 71 at ECF p. 6). Like Dr. Pirelli, Dr. Mack proposed a two-day examination of Plaintiff, including a comprehensive clinical interview and mental status examination, psychological and neuropsychological tests, a collateral interview of Plaintiff's grandmother, and a review of relevant documents. (*Id.* at ECF p. 7). Dr. Mack intends to administer selected psychological tests to assess "intelligence, attention, memory, executive-frontal [lobe]

including limited motor testing, and language and academic functioning, including tests of written and auditory-verbal comprehension." (*Id.* at ECF pp. 7-8). In Dr. Mack's opinion, such testing is necessary for a comprehensive assessment and mandatory in both the psychological and neuropsychological contexts to properly assess Plaintiff's cognitive status. (*Id.* at ECF p. 8).

Plaintiff objects to the scope of Dr. Mack's proposed examination, arguing it is overly broad and goes beyond the scope of Dr. Pirelli's report. (ECF No. 66). Plaintiff argues that his "neurocognitive functioning is not 'in controversy' because [he] has asserted only psychological injuries and Dr. Pirelli diagnosed only PTSD" and that Defendants "have not demonstrated 'good cause' for an examination targeting conditions that Plaintiff never placed at issue." (ECF No. 66-1 at ECF p. 6). In short, Plaintiff feels that because his own expert was not a neuropsychologist and limited his diagnosis to just PTSD, Defendants' expert should be similarly limited.

## LEGAL ANALYSIS

Fed. R. Civ. P. 26(c) permits the court to enter a protective order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of good cause. *See Pansy v. Borough of Stroudsburg*, 23 F.3d. 772, 785-87 (3d Cir. 1994). "The burden of persuasion rests with the party seeking the protective order." *Jackson v. Chubb Corp.*, 193 F.R.D. 216, 219 (D.N.J. 2000). "[B]road allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c) test. . . . Moreover, the harm must be significant, not a mere trifle." *Id.* (omission in original) (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). "[T]he party seeking a protective order must demonstrate a particular need for protection." *Doe v. Princeton Univ.*, 349 F.R.D. 92, 96 (D.N.J. 2025) (quoting *Walgreens Specialty Pharm., LLC v. Atrium Admin. Servs., Inc.*, No. 19-cv-12756, 2020 WL 6042280, at *2 (D.N.J. Oct. 13, 2020)) (internal quotation marks omitted). "Establishing 'good

cause' requires the movant to 'specifically demonstrate[] that disclosure will cause a clearly defined and serious injury.'" *Id.* (alteration in original) (quoting *Walgreens Specialty Pharm.*, 2020 WL 6042280, at *2).

Fed. R. Civ. P. 35(a) permits, upon a showing of good cause, the physical or mental examination of a party who places their mental or physical condition in controversy. As the Rule makes clear, the party seeking such an examination must adequately demonstrate both that the condition is truly "in controversy" and that there is "good cause" for the examination. *Id.* This burden is "not met by mere conclusory allegations of the pleadings – nor by mere relevance to the case – but require[s] an affirmative showing by the movant that each condition as to which examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). However, a movant is not required to "prove his case on the merits in order to meet the requirements for a mental or physical examination." *Id.* at 119. Indeed "there are situations where the pleadings alone are sufficient to meet these requirements." *Id.* One such example is when the plaintiff in an action specifically asserts a mental or physical injury. *Id.* (referencing *Sibbach v. Wilson & Co.*, 312 U.S. 1 (1941)); *see also Ziemann v. Burlington Cnty. Bridge Comm'n*, 155 F.R.D. 497, 501, n. 1 (D.N.J. 1994) (finding that the plaintiff in a sexual harassment suit put her mental health in controversy where her psychological injuries comprised the majority of her claimed damages). In contrast, when someone else places a party's medical condition in controversy, the movant must establish Rule 35's "good cause" and "in controversy" requirements. *Schlagenhauf*, 379 U.S. at 121-22 (remanding to the District Court for a determination of whether the bus driver defendant in a motor vehicle accident must submit to several medical examinations where he did not place his own

medical condition in controversy but, rather, a co-defendant argued that he was not physically or mentally capable of operating a bus due to a visual impairment).

In determining whether a plaintiff's mental status is "in controversy," an allegation of emotional distress, without more, is insufficient to justify a medical examination. *See Gross-Quatrone v. Mizdol*, No. 17-cv-13111 (JXN) (LDW), 2022 WL 254544, at *2 (D.N.J. Jan. 27, 2022) (holding that "garden variety" emotional distress claims are generally insufficient to place a party's mental condition in controversy within the meaning of Rule 35) "'[E]motional distress' is not synonymous with the term 'mental injury.'" *Bowen v. Parking Auth. of City of Camden*, 214 F.R.D. 188, 193 (D.N.J. 2003) (quoting *Turner v. Imperial Stores*, 161 F.R.D. 89, 97 (S.D. Cal. 1995)). The "in controversy" requirement is satisfied "where, in addition to a claim of emotional distress, the case involves one or more of the following factors:

> (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental conditions is in controversy within the meaning of Rule 35(a).

*Kuminka v. Atl. Cnty. N.J.*, 551 F. App'x 27, 29 (3d. Cir. 2014) (quoting *Turner*, 161 F.R.D. at 95) (internal quotation marks omitted).

In evaluating whether there is good cause to compel a mental examination, the court "must weigh the relevance of the information sought, the need to 'preserve the equal footing of the parties' with respect to their ability to evaluate one party's mental condition, and the availability of such information from other sources." *Gross-Quatrone* 2022 WL 254544, at *2 (quoting *Womack v. Stevens Transport, Inc.*, 205 F.R.D. 445, 446-47 (E.D. Pa. 2001)). "Fundamental fairness demands that defendants equally be allowed to inquire into the cause and extent of

plaintiff's complex web of physical and mental symptoms with the assistance of a qualified expert." *Id.* at *4.

In the instant action, there can be no question that Plaintiff placed his mental health in controversy. His own pleadings allege that he "suffer[ed] permanent and serious personal injury and emotional pain and suffering" and "severe physical, mental, and emotional trauma, humiliation and embarrassment" as a result of the incidents pled in the complaint. (ECF No. 1 ¶¶ 27, 38). He bolsters this assertion in his discovery responses, wherein he states he is under treatment for PTSD, anxiety, depression, has a brain tick, takes prescription medications, and has a service dog to warn of oncoming seizures. (Parisi Cert., Ex. B, No. 5). Indeed, Plaintiff does not dispute that Defendants are entitled to conduct a mental health examination of him pursuant to Rule 35. (ECF No. 66-1 at ECF p. 15 (acknowledging that "Plaintiff has asserted a specific psychiatric diagnosis of PTSD – which satisfies certain factors to place his psychological status in controversy")).

What Plaintiff challenges is the *scope* of that examination. (*Id.*). Plaintiff contends that he "never alleged that Defendants caused a traumatic brain injury, neurocognitive disorder, executive dysfunction, diminished intellectual functioning, learning disability, memory impairment, or other cognitive defect." (ECF No. 66-1 at ECF p. 13). Plaintiff argues that, because he did not put these issues in controversy, Dr. Mack's examination should not extend to any neurocognitive condition or cognitive impairment. (*Id.* at ECF pp. 13-14).

Plaintiff's view of what constitutes "in controversy" is far too narrow. Plaintiff's emotional distress claim falls squarely within several of the categories articulated in *Kuminka* and *Turner.* First, there is a specific allegation of a mental or psychiatric injury or disorder. Namely, Plaintiff alleges psychological injuries, including PTSD, emotional distress, humiliation, embarrassment, and related psychological pain and suffering. (ECF No. 1; ECF No. 66-2 ¶ 4). [redacted]

[redacted] Second, by his own words, Plaintiff's emotional distress is "unusually severe." (ECF No. 1 ¶ 38 (Plaintiff "was caused to suffer *severe* physical, mental, and emotional trauma, humiliation and embarrassment" (emphasis added))). [redacted] Third, Plaintiff offers expert testimony in support of his emotional distress claim, that of Dr. Pirelli. Accordingly, Plaintiff has placed his mental condition in controversy and there is good cause for the medical examination.

Once Plaintiff places his mental condition in controversy, he cannot unilaterally decide how Defendants chose to examine the veracity and extent of this claim. "Fundamental fairness demands that defendants equally be allowed to inquire into the cause and extent of plaintiff's complex web of physical and mental symptoms with the assistance of a qualified expert." *Gross-Quatrone*, 2022 WL 254544, at *4 (citing *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 392 (S.D. Tex. 2013). Nor can Plaintiff dictate the type of expert Defendants retain or how that expert carries out his examination. *See Ziemann*, 155 F.R.D. at 501 (permitting plaintiff to be examined by both a psychiatric and psychological expert, even though plaintiff only offered a psychiatric expert on her own behalf, because each experts' analyses "focus[ed] on different areas of thought and behavior"); *Peters v. Nelson*, 153 F.R.D. 635, 639 (N.D. Iowa 1994) (defendants demonstrated good cause for plaintiff to submit to two examinations by two experts in two different specialties, psychology and psychiatry, even though plaintiff offered only a psychologist as her own expert);

*Gross-Quatrone*, 2022 WL 254544, at *4 (defendants were "entitled to consult their own expert to rebut the primary source of plaintiff's alleged damages" even though the plaintiff declined to retain her own expert and instead intended only to offer the testimony of her treating psychiatrist); *Laney v. Hosp. Bd. of Dirs.*, No. 2:09-cv-678, 2010 WL 2540598, at *4 (M.D. Fla. June 22, 2010) (expressing hesitancy to limit the types of tests to be administered because the medical expert is best positioned to make an informed judgment about what is needed to conduct a comprehensive examination). In short, just because Plaintiff decided to limit the scope of his expert's examination does not impose the same limits on Defendants.

The fact that Plaintiff chose to retain a forensic psychologist, rather than a neuropsychologist, does not mean that Defendants must hire an expert in the same field or that they are barred from hiring a different type of expert that they believe is better qualified. Nor can Plaintiff limit how Defendants choose to defend themselves against his emotional distress claim. Defendants may argue that Plaintiff suffered from pre-existing conditions long before the incident that triggered his complaint, and that nothing changed following his arrest and incarceration. They may challenge Plaintiff's claims that his symptoms were exacerbated by Defendants' conduct. They may argue that Dr. Pirelli's examination of Plaintiff was unduly limited, and that the industry standard demands the more expansive testing sought by Dr. Mack. (ECF No. 71 at ECF p. 8) (suggesting that symptom validity tests and performance validity tests are mandatory for a proper forensic analysis). Plaintiff cited no persuasive authority that permits him to unilaterally dictate the type of mental examination a clinician could use.[1]

---

[1] It should also be noted that the citations in Plaintiff's brief failed to indicate the court that issued the opinion or, for unpublished opinions, the full date the opinion was issued. This made it cumbersome for the Court to locate the cases. In addition, the vast majority of the cases cited by Plaintiff were outside of the Third Circuit. While informative, they are not necessarily binding on

Defendants have the right to rebut Dr. Pirelli's conclusion that Plaintiff's "prior conditions do not account for the types of posttraumatic symptoms he developed as a result of the referral incidents." (ECF No. 71-1 at ECF p. 42). The fact that Dr. Pirelli limited his diagnosis to PTSD and did not allege any sort of traumatic brain injury, neurocognitive disorder, executive dysfunction, diminished intellectual functioning, learning disability, memory impairment, or other cognitive defect does not mean that Defendants' expert is prohibited from exploring alternate diagnoses or causes for Plaintiff's mental health issues. Dr. Pirelli concluded that Defendants' actions are the cause of his PTSD, triggered new symptoms, and exacerbated prior symptoms. (ECF No. 66-1 at ECF pp. 16-17; Parisi Cert. Ex. C). Defendants have the right to test each of these theories and investigate alternate hypotheses for Plaintiff's mental health conditions. [redacted] Plaintiff's expert chose to discount these potentially contributing factors; however, Defendants'

this Court. Further, there is plenty of applicable Third Circuit case law that was wholly omitted from Plaintiff's brief.

expert may conclude differently. Dr. Mack certainly has the right to fully explore, assess and analyze this information before rendering his report.

Accordingly, the Court finds that Defendants demonstrate "good cause" for the requested neuropsychological examination. The information derived from a neuropsychological examination is relevant to: the reliability of Dr. Pirelli's examination and findings; the accuracy of Dr. Pirelli's diagnosis; the cause of Plaintiff's mental health issues; whether, and to what extent, Plaintiff's prior mental health conditions contributed to his current symptoms; whether his pre-existing symptoms were exacerbated by Defendants' alleged conduct; and the trajectory of Plaintiff's symptoms.

Plaintiff's argument that the information Defendants seek is available from other sources is unavailing. (ECF No. 66-1 at ECF pp. 18-19). The dispute here is not about the obtaining Plaintiff's medical records. It is about an expert conducting a medical examination so that he can render a medical diagnosis and opinion. That Dr. Mack may have access to Plaintiff's historical medical records does not alleviate the need for him to thoroughly examine Plaintiff. Incidentally, it appears that the primary psychologist who treated Plaintiff throughout his life is now deceased, so those critical medical records are not available to Dr. Mack – completely undermining Plaintiff's argument. (ECF No. 71 at ECF pp. 13).

**Collateral Interviews**

Plaintiff's objection to Dr. Mack's request to conduct a collateral interview of his 93-year-old grandmother, Ms. Ferri, is utterly frivolous. Plaintiff contends that the interview would subject Ms. Ferri to an unnecessary burden. (ECF No. 66-1 at ECF p. 23). Apparently, this concern did not trouble Plaintiff when his own expert interviewed Ms. Ferri. It is difficult for the Court to fathom how Plaintiff could argue that Fed. R. Civ. P. 35 "does not authorize an examiner to interview non-

parties" when his own expert did exactly that. (*Id.* pp. 22-23). Plaintiff's attempt to exempt his own conduct by claiming Ms. Ferri's interview was part of Dr. Pirelli's "retained expert work" holds equal weight with regard to Dr. Mack's "retained expert work." As our Supreme Court aptly stated "[d]iscovery 'is not a one-way proposition.'" *Schlagenhauf*, 379 U.S. at 113 (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). It would be unjust and prejudicial to allow Plaintiff's expert to conduct a collateral interview of Ms. Ferri, then bar Defendants' expert from doing the same. Dr. Mack has the right to conduct the interview and draw his own conclusions from the information Ms. Ferri provides. More problematically, the Court has already definitively decided this issue during the last status conference, so the Court is unclear why Plaintiff again raises this issue in his motion papers. The Court finds no reasons to depart from its previous decision. The collateral interview will be allowed.

## **CONCLUSION**

The Court finds, in balancing the relative interests of the parties, that there is good cause to permit Plaintiff to undergo a neuropsychological evaluation by Dr. Mack and to undergo the various testing that Dr. Mack requires to conduct his evaluation. Defendants have affirmatively demonstrated that Plaintiff's mental health is in controversy and there is good cause to support a neuropsychological evaluation. The examination shall be conducted in person at Dr. Mack's office.[2] Dr. Mack shall be permitted to conduct a collateral interview of Ms. Ferri. Plaintiff's motion for a protective order is therefore DENIED.

[2] Plaintiff filed this action in New Jersey and, therefore, he availed himself of its jurisdiction. Accordingly, he must travel to New Jersey to attend the examination by Dr. Mack. The Court does not find that a virtual examination is a viable alternative.

**ORDER**

**IT IS,** on this **13th** day of **November, 2026,** hereby **ORDERED** as follows:

1. Plaintiff's Motion for a Protective Order (ECF No. 66) is **DENIED without prejudice**.
2. Dr. Mack is permitted to conduct a neuropsychological examination of Plaintiff, including the tests and assessments he deems necessary. The assessment shall be conducted over two full days, if needed, and shall be conducted IN PERSON at Dr. Mack's office. The evaluation shall be completed by **December 18, 2026.**
3. Dr. Mack's expert report shall be served no later than **January 18, 2027.**
4. The deadline for expert discovery, including all expert depositions, is extended until **February 26, 2027.**
5. The **November 16, 2026** status conference is hereby **CANCELLED**. There shall be a status conference before Magistrate Judge Adams on **March 2, 2027 at 3:00 p.m.** via video conference. Microsoft Teams login credentials will be provided. The parties shall submit a joint status letter, no longer than 3 pages in length, at least 5 business days before the conference.
6. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 66 and to **FILE THIS OPINION AND ORDER UNDER SEAL**.

**SO ORDERED.**

***/s/ Stacey D. Adams***
STACEY D. ADAMS, U.S.M.J.